IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-cv-27

| | |
|---|---|
| MCLEOD ADDICTIVE DISEASE CENTER, INC., a North Carolina Corporation,<br>　　　　Plaintiff,<br><br>vs.<br><br>WILDATA SYSTEMS GROUP, INC., an Ohio Corporation,<br>　　　　Defendant. | ORDER |

　　　　This matter is before the court upon motion of Defendant WilData Systems Group, Inc. ("WilData") to dismiss, or in the alternative, transfer venue to the United States District Court for the Southern District of Ohio, Eastern Division, in Columbus, Ohio.

**FACTS:**

　　　　Plaintiff, McLeod Addictive Disease Center ("McLeod"), is a non-profit organization that provides extensive addictive disease services to approximately 4,500 to 5,000 clients per day and has grown steadily since it began in 1969. McLeod is domiciled in Mecklenburg County, North Carolina. Defendant WilData is a small business that provides hardware and software to companies. Its headquarters are in Dublin, Ohio. The president of WilData, Jeff Wilt, also resides in Ohio, but the company's three other employees reside in different states. WilData contracted with McLeod to provide certain hardware and software for McLeod's growing business. After contract negotiations, WilData drew up a contract in Ohio, sent it to McLeod in

1

North Carolina, and McLeod signed the contract without making any modifications. After signing, McLeod sent the contract back to WilData in Ohio, where Jeff Wilt signed it on November 5, 2004. The contract between the parties included a mandatory forum selection clause that read,

> In any action brought under this Agreement, or resulting from McLeod's relationship created hereunder, the parties agree that venue shall be situated in Columbus, Franklin County, Ohio. McLeod hereby agrees that it shall submit to personal jurisdiction of any court located in such venue. Any action brought under this agreement shall be brought only in the stated venue.

Despite the mandatory forum selection clause, on January 24, 2008, McLeod filed this lawsuit for breach of contract, alleging that the hardware and software provided by WilData under the contract never became operational. WilData has now moved to dismiss or transfer for improper venue.

**DISCUSSION:**

**Motion to Dismiss for Improper Venue**

The court will first address WilData's motion to dismiss for improper venue under 28 U.S.C. § 1406. It appears to the court that under 28 U.S.C. §§ 1391(a) and (c) venue is proper in North Carolina. The actions out of which the dispute arises, the alleged failure of the hardware and software provided by WilData, primarily occurred in Charlotte, North Carolina. Moreover, under § 1391(c), the Defendant is subject to personal jurisdiction in this venue. Because venue is proper in this forum, WilData's motion to dismiss is denied.

**Motion to Transfer Based on the Forum Selection Clause**

Even if venue in a jurisdiction is proper, a court may "for the convenience of parties and

2

witnesses, in the interest of justice," transfer the action to another district where venue is proper. 28 U.S.C. § 1404(a) (2006).  This court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on an "individualized, case-by-case basis" of convenience and fairness to the parties.  AC Controls Co. v. Pomeroy Computer Res., Inc., 284 F.Supp.2d 357, 360 (W.D.N.C. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988)).  In this case, to consider the convenience and fairness to the parties of a transfer, the validity of the forum selection clause must be determined.

The validity of the mandatory forum selection clause must be determined because it is the principal argument that WilData offers in support of its motion to transfer.  The Supreme Court has held that forum selection clauses are prima facie valid unless the objecting party can prove that enforcement of the clause would be unreasonable.  See Bremen v. Zapata, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913 (1972).  Case law has developed standards to determine when enforcement of a forum selection clause would be "unreasonable:" (1) if the formation of the clause was procured by fraud or overreaching, (2) if the complaining party will be deprived of his day in court because of the inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy,[1] or (4) enforcement of the clause would contravene a strong public policy of the state.  See Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 595, 111 S.Ct. 1152, 1528 (1991);  See, e.g., Bremen, 407 U.S. at 12-13, 15, 18 (1972).

In the present case, McLeod has not alleged that Wildata procured the forum selection clause by

---

[1]McLeod does not allege that if the case is litigated under Ohio law it will be deprived of a remedy.  Accordingly, the court will not address this factor.

fraud.  McLeod does argue, however, that WilData procured the clause by overreaching.  McLeod relies upon Yoder v. Heinold Commodities, Inc., 630 F.Supp. 756, 759 (E.D.Va. 1986), in which the court found a forum selection clause between a broker and investor unenforceable because the broker had superior bargaining power.  However, Yoder is distinguishable because the defendant in Yoder specifically told the plaintiff that he should not look at the contract because it was just a standard form.  Id. at 758.  There are no such allegations in this case.  McLeod argues that there is a disparity of bargaining power in the contract, particularly because it is a non-profit organization.  The fact that McLeod is a non-profit organization is not indicative of any unequal bargaining power here.  As WilData points out in its reply brief, McLeod has admitted that it is one of the largest addictive services providers in the Carolinas.  Though a non-profit organization, it appears that McLeod has sufficient resources to contract on equal footing with a small business like WilData.

 McLeod also contends that it will effectively lose its day in court if forced to litigate this matter in Ohio.  McLeod cites the number of witnesses, all located in Charlotte, North Carolina, that would have to travel to Ohio for the suit, thus halting business at home.  Though McLeod does demonstrate that most of its witnesses reside in Charlotte, it does not meet its heavy burden of showing that the proposed venue is so seriously inconvenient as to deprive McLeod from having its day in court.  See AC Controls 284 F.Supp.2d at 362.  McLeod is a large non-profit organization.  The cost of transporting several employees to Ohio does not seem devastating enough to prevent transfer.  Based on the potential witnesses that WilData claims it will likely call, it appears that witnesses for the case will be drawn from all over the country, (for example, North Carolina, Ohio, Wisconsin and California).  Thus, Ohio is a more central location for all of the witnesses likely to be called.

Citing N.C. Gen. Stat. § 22B-3, McLeod claims that enforcement of the forum selection clause would contravene strong public policy of North Carolina. Section 22B-3 of the North Carolina General Statutes provides as follows:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable.

N.C. Gen. Stat. § 22B-3 (2007). It appears to the court, however, that this statute is inapplicable because the contract was "entered into" in Ohio, not North Carolina. "In North Carolina it is a generally accepted principle that the test of the place of a contract [is] the place at which the last act was done by either of the parties essential to a meeting of the minds." Key Motorsports, Inc. v. Speedvision Network, L.L.C., 40 F.Supp.2d 344, 347 (M.D.N.C. 1999) (quoting Fast v. Gulley, 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967) (citations omitted)). Since the last act essential to a meeting of the minds between the parties in this dispute occurred when Jeff Wilt signed the contract for WilData in Ohio, the North Carolina statute does not apply.

Although it appears to the court that the forum selection clause is reasonable, the court must address whether transfer is proper based on the forum selection clause. Though a valid forum selection clause does not conclusively establish proper venue, it is a "significant factor that figures centrally in the District Court's calculus." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) (quoting Stewart, 487 U.S. at 29 (1988)). This court has cited eleven factors to be considered in transferring a case pursuant to 28 U.S.C. § 1404(a):

    1. The plaintiff's choice of forum;

>  2. The residence of the parties;
>  3. The relative ease of access of proof;
>  4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
>  5. The possibility of a view;
>  6. The enforceability of a judgment, if obtained;
>  7. The relative advantages and obstacles to a fair trial;
>  8. Other practical problems that make a trial easy, expeditious, and inexpensive;
>  9. The administrative difficulties of court congestion;
>  10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
>  11. The avoidance of unnecessary problems with conflict of laws.

AC Controls 284 F.Supp.2d at 363 (quoting Rice v. BellSouth Adver. & Publ. Corp., 240 F. Supp.2d 526, 529 (W.D.N.C. 2002) (citation omitted)).

The Plaintiff's Choice of Forum:

Though McLeod initially sued in North Carolina, the valid forum selection clause stipulates that disputes must be settled in the Southern District of Ohio. Where a valid forum selection clause exists it makes sense to consider the forum selection clause as the first forum selected by the Plaintiff when it agreed to the contract. See AC Controls 284 F.Supp.2d at 363 (citation omitted). Since McLeod had the opportunity to read the contract before signing it, and failed to make any objection to the clause, it seems logical to assume that McLeod accepted the forum selection clause.

Residence of the Parties:

This factor appears to be neutral. McLeod resides in North Carolina and WilData in Ohio.

<u>Relative ease of access of proof</u>:

It is undisputed that this factor is neutral for both parties.

<u>The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses</u>:

McLeod has pointed out that all of its witnesses are in Charlotte, North Carolina. However, whatever forum is selected, one party will have to bring in witnesses from another state.  See <u>AC Controls</u> 284 F.Supp.2d at 364 (citing <u>Brock</u>, 933 F.2d at 1258).  Even if venue if transferred to Ohio, WilData will also incur costs for transporting witnesses for its case who allegedly reside in other states.  Accordingly, this factor does not heavily favor one forum over another.

<u>The possibility of a view</u>:

The possibility of a view is not a relevant consideration in this case.

<u>The enforceability of a judgment, if obtained</u>:

Neither party raises this issue.

<u>The relative advantages and obstacles to a fair trial; and other practical problems that make a trial easy, expeditious and inexpensive</u>:

The ability to have a fair trial is neutral in either forum.  As to practical problems that will arise out of the venue, McLeod argues that having the trial in Ohio would cripple its business in North Carolina.  This seems unlikely given the extensive evidence of McLeod's many resources and growth as the "largest Substance Abuse Treatment Facility in the Carolinas."  If anything, it appears that trying the case in North Carolina would be more detrimental to WilData, as it has only four employees, three of whom reside in different states

and would be witnesses in the case.

<u>The administrative difficulties of court congestion</u>:

According to the Federal Judiciary website the median time to trial in this court in 2007 was approximately 9.3 months. The median time in the Southern District of Ohio was 12.7 months. See http://www.uscourts.gov/caseload2007/tables/C05Mar07.pdf. This appears to be essentially a neutral factor.

<u>The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action</u>:

Since the last act to validate the contract occurred in Ohio, it appears that the contract is governed by Ohio law. A district court in Ohio would certainly have more experience and expertise in applying Ohio law than this court. See AC Controls 284 F.Supp.2d at 364. Thus, this factor weighs in favor of transfer.

<u>The avoidance of unnecessary problems with conflict of laws</u>:

Neither party raises this issue.

It appears to the court that these factors are all either neutral or weigh slightly in favor of transfer to Ohio.

As the court has determined that the forum selection clause is valid and reasonable, and the eleven factor analysis does not weigh in favor of retaining the case in this forum,

IT IS THEREFORE ORDERED that WilData's Motion to Dismiss based on improper venue is hereby DENIED, and WilData's Motion to Transfer is hereby GRANTED. This action

is hereby TRANSFERRED to the Southern District of Ohio, Eastern Division.

Signed: June 10, 2008

Graham C. Mullen
United States District Judge