IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

McLEOD ADDICTIVE DISEASE
CENTER, INC.,
        Plaintiff,

      v.                              Case No. 2:08-CV-570
                                     MAGISTRATE JUDGE KING

WILDATA SYSTEMS GROUP, INC.,
        Defendant.

**OPINION AND ORDER**

With the consent of the parties, *see* 28 U.S.C. §636(c), this matter is before the Court on Defendant's Motion for Summary Judgment (Doc. #43) and Plaintiff's Motion for Summary Judgment (Doc. #68). For the reasons that follow, the Defendant's motion is granted in part and denied in part. The Plaintiff's motion is denied.

**I.**

Plaintiff McLeod Addictive Disease Center, Inc. ["Plaintiff"], brings this action for breach of contract and breach of warranties against Defendant Wildata Systems Group, Inc. ["Defendant"], with respect to certain computer software and hardware products. Defendant asserts a counterclaim for breach of contract. Plaintiff is a North Carolina corporation and Defendant is an Ohio corporation. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

Plaintiff operates a non-profit organization engaged in the business of assisting individuals with various addictions. (*Complaint,* ¶3). In 2004, Plaintiff sought a new computer software and hardware system to track patient information as well as to aid in the electronic

submission of reimbursement requests to Medicare and Medicaid.[1] (*Deposition of Helen Romano,* pp. 26, 31). Plaintiff manages approximately 4,000 to 5,000 patients daily and bills Medicaid approximately $300,000 per month. (*Id.,* p. 31).

Defendant sells and licenses computer software programs to health care providers across the United States. (*Complaint,* ¶4). Plaintiff and Defendant entered into a Software License Agreement [hereinafter, "the Agreement"] on October 29, 2004. (*Id.,* ¶13). Plaintiff alleges that, prior to entering into the Agreement, Plaintiff performed due diligence on Defendant regarding its computer products. (*Id.,* ¶10). According to Plaintiff, Defendant's owner, Jeffrey Wilt, represented to Plaintiff that Defendant's products would perform all the functions sought by Plaintiff. (*Id.,* ¶11). According to Helen Romano, leader of Plaintiff's IT department, the system had to accomplish three tasks: (1) migrate data from Plaintiff's former software to the new software; (2) merge new data for patients with data from Plaintiff's former software; and (3) operate on a Windows-based system to electronically submit the "837" reimbursement forms. (*Romano Depo.,* p. 26).

The Agreement provides for a license of web-based software called "Client Management Information System [CMIS] using J Walk software." (*Exhibit A,* ¶1, attached to *Plaintiff's Memorandum contra*). Pursuant to the Agreement, Plaintiff was to receive, for a total price of $283,100.00, the CMIS; the J Walk server license for the IBM AS/400; J Walk licenses for 112 concurrent CMIS users; and conversion of as many data files as possible into CMIS. (*Id.*). The Agreement also provides for technical support and other services for the resolution of problems with the software. (*Id.,* ¶10). In this action, Plaintiff claims that, despite nearly three years of

---

[1] Reimbursement requests were to be made electronically, pursuant to federal regulation, via a form known as the "837." (*Romano Depo.,* p. 26).

2

working with the software, the software never operated as represented.[2] Plaintiff further claims that Defendant acted in breach of certain express and implied warranties in connection with the Agreement. Plaintiff seeks damages in excess of $75,000 on its contract and warranty claims.

Defendant argues that the representations Plaintiff allegedly relied upon were not part of the Agreement. Defendant also contends that any express or implied warranties were excluded by the terms of the Agreement. Further, in its counterclaim, Defendant alleges that Plaintiff failed to pay the "annual Technical Support Fee in the sum of $49,000 for the period of December 1, 2006 through November 30, 2007 and $49,000 for the period December 1, 2007 through November 30, 2008 . . . ." (*Counterclaim,* ¶7). Defendant seeks payment of these sums and the return of all software and related documents. (*Id.,* ¶12).

## II.

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is

---

[2]In particular, Plaintiff claims that the data from the former software system did not migrate to the new CMIS system. Therefore, Plaintiff hied Mr. Vencint Joyce, an independent contractor, to manually convert and import data in order to begin submitting electronic reimbursement requests. (*Deposition of Vencint Joyce* at 10).

genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III.

**A. Plaintiff's Contract Claim**

The Court first considers whether Defendant is entitled to summary judgment on

Plaintiff's contract claim. Plaintiff alleges that the Agreement was breached in the following ways:

> (a) The Plaintiff was told that the Defendant would operate dual software systems (old and new), until the new program was fully operational - however, only the old system ever functioned.
>
> (b) The Plaintiff was promised that the medical records portion of the system would be operable by January 2005 - however, as of the date of this [*Complaint*], the medical records portion is still not operable.
>
> (c) The Plaintiff was advised that there would be an "auto-matching system" to migrate old data to the new software so the Plaintiff could perform billing tasks - this never occurred.
>
> (d) Representatives of the Plaintiff were assured that the conversion would be "easy and painless" but it was later discovered that the computer / software never had the capacity to perform this task.
>
> (e) Although the Plaintiff purchased 112 licenses, no more than one license has ever operated - and that license did not operate in an efficient manner as promised.

(*Complaint,* ¶20). Paragraph 21 of the Complaint further alleges that, although Plaintiff paid $49,000 a year for extended service of the 112 licenses, only one machine ever operated.

Defendant argues that it is entitled to summary judgment because the substance of Plaintiff's contract claim relies upon evidence barred by the parol evidence rule. According to Defendant, the Agreement does not address the alleged "promises" identified in the *Complaint*. Rather, the Agreement simply states that the software licenses would be sold to and installed on Plaintiff's computer system. Thus, Defendant argues, the "promises" alleged in the *Complaint* constitute parol evidence that would vary the terms of the written agreement.

The parol evidence rule "prohibits parties to a contract from later contradicting the express terms of the contract with evidence of other alleged or actual agreements." *Evilsizor v. Becraft & Sons Gen. Contractors, Ltd.*, 156 Ohio App.3d 474, 477 (Ohio App. 2004), citing

*Brantley Venture Parnters II, L.P. v. Dauphin Deposit Bank & Trust Co.*, 7 F.Supp.2d 936 (N.D. Ohio 1998). The purpose of the rule is to preserve the integrity of written contracts. *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 75 Ohio St.3d 433, 440 (1996). Thus, absent a claim of fraud, mistake, or some other invalidating cause, prior or contemporaneous oral agreements cannot be used to alter, contradict or vary a written agreement. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000).

In determining whether the rule applies in this case, the Court considers whether each of the allegations raised in Paragraph 20 of Plaintiff's *Complaint* will have the legal effect of varying the Agreement. In subsection (a) of Paragraph 20, Plaintiff alleges that there was an agreement that Plaintiff's former software and the new CMIS software would work together until the new CMIS system was fully operational. According to Plaintiff, the new software never functioned. Defendant argues that, because there is no provision in the Agreement requiring that both software systems work together, this allegation constitutes parol evidence. Plaintiff argues that this promise was a condition precedent to the very existence of the Agreement and that the allegation is therefore not barred by the parol evidence rule.

There is an exception to the parol evidence rule in cases where extrinsic evidence is necessary to prove a condition precedent to the existence of a contract. *Beatley v. Knisley*, 183 Ohio App. 3d 356, 361 (Ohio App. 2009). "Courts admit extrinsic evidence of a condition precedent because satisfaction of such a condition must occur before a contract comes into existence." *Id.* (citations omitted). The exception exists because, in such an instance, the condition precedent does not modify the terms of a contract, but rather "determines whether the contract ever became effective." *Id.*

Defendant acknowledges this exception to the parol evidence rule but argues that this exception is inapplicable because the Agreement contains a merger clause.[3] However, a merger clause does not necessarily preclude evidence of a condition precedent. "The rule of contract integration is a corollary principle to the parol evidence rule, as the degree of integration determines whether the parol evidence rule applies to a contract." *Id.* at 362, citing *Galmish,* at 28. If the subject matter of the purported condition precedent is addressed in the contract in any way, the condition cannot be established by parol evidence. *Id.*

In this case, the alleged promise that Plaintiff's old and new software systems would operate simultaneously is not expressly reflected in the Agreement. Thus, evidence of this alleged promise is parol evidence because it would vary the terms of the Agreement. Furthermore, the Court is not convinced that this alleged promise is a condition precedent to the very existence of the Agreement; there is no evidence to that effect. Although Plaintiff may have preferred that both the old and new software systems work simultaneously until the new system was fully functioning, there is no evidence that the parties jointly contemplated that feature such that the alleged provision constituted a condition precedent to the Agreement's very existence. Accordingly, this exception to the parol evidence rule does not apply. Evidence of the promise alleged in Paragraph 20(a) of the *Complaint* is therefore barred by the parol evidence rule.

Paragraph 20(b) of the *Complaint* alleges a promise that all of Plaintiff's medical records would be operable on the new system by January 2005. The Agreement does not contain this

---

[3]Paragraph 16(E) of the Agreement states:
<u>Entire Agreement</u>- This written Agreement constitutes the entire Agreement between the parties and there are no representations, oral or written, relating to data processing, software, documentation of software, or to this Agreement which have not been incorporated herein.
(*Exhibit A* attached to *Plaintiff's Memorandum contra*).

alleged promise. Furthermore, there is no evidence that the operation of all medical records by January 2005 was a condition precedent to the existence of the Agreement. Because this alleged promise would vary the terms of the Agreement, evidence of this promise is therefore barred by the parol evidence rule.

In reaching these conclusions with respect to Subsections (a) and (b) of Paragraph 20 of the *Complaint*, the Court does not intend to limit Plaintiff's claim that the software failed to operate as agreed to by the parties. Although Defendant submits that the Agreement was simply a contract for delivery of goods, the Court rejects this argument. The Agreement clearly involves a services aspect as well. Paragraph 10 of the Agreement, entitled "Technical Support and Software Maintenance Plan," provides for "additional supportive services for the resolution of problems and/or the answering of questions concerning the Licensed Software and/or the operation of hardware as it relates to the operation of the Licensed Software . . . ." (*Exhibit A,* ¶10, attached to *Plaintiff's Memorandum contra*). In the Court's view, this provision evidences that the Agreement was not simply a contract for the sale of goods.[4]

The Court concludes that the remaining allegations in Paragraph 20 of the *Complaint* are not barred by the parol evidence rule. Subsection (c) alleges that existing data from Plaintiff's computer system was to have been migrated to the new software; the Agreement specifically provides for "[c]onversion of as many data files as possible into CMIS." (*Exhibit A,* ¶1). The promise alleged in Subsection (c) does not alter or vary the Agreement. Subsection (d) alleges that the conversion to CMIS would be "easy and painless." (*Complaint,* ¶20(d)). In the Court's

---

[4]Software is considered a "good" for purposes of Article 2 of the Uniform Commercial Code ["UCC"]. *See Arlington Elec. Const. v. Schindler Elevator Corp.*, No. L-91-102, 1992 WL 43112 (Ohio App. March 6, 1992). In the Court's view, the Agreement is a mixed contract for both goods and services.

8

view, this allegation is encompassed within Plaintiff's overall claim that the software failed to function. Thus, the Court concludes that evidence of the alleged promise in Subsection (d) is not barred by the parol evidence rule.

The final allegation contained in Paragraph 20 of the *Complaint* is that, although 112 licenses were purchased from Defendant, no more than one ever functioned. (*Id.*, ¶20(e)). The Agreement provides for "J Walk licenses for 112 concurrent CMIS users." (*Exhibit A,* ¶1). As noted *supra*, the Agreement expressly provides for technical support if Plaintiff encountered problems with the licensed software. In the Court's view, the alleged promise in Subsection (e) does not vary or alter the terms of the Agreement. The Court notes that Defendant also disagrees with Plaintiff's specific factual allegation as to the 112 licenses; according to Defendant's expert, all 112 licenses were operable. (*See Affidavit of Bryan Dietz*, attached as Exhibit 1 to *Defendant's Motion for Summary Judgment*). However, according to Helen Romano, who leads Plaintiff's IT Department, the system never worked. (*See Deposition of Helen Romano,* pp. 65-69). Whether the system, and specifically the 112 licenses, were operable is not a matter for resolution on summary judgment. The matter presents a genuine issue of material fact for resolution at trial.[5]

The Defendant also moves for summary judgment on the allegation contained in Paragraph 21 of the *Complaint*, which states: "[T]he Plaintiff paid $49,000 a year for extended service on the 112 licenses - yet has only one machine operating at any capacity." (*Complaint*,

---

[5]Again, the Court notes Defendant's argument that, because 112 licenses were allegedly installed on the system, Plaintiff has no cognizable claim. As the Court stated *supra*, the Agreement did not contemplate merely a sale of goods; rather, the Agreement also contemplated services with respect to the "resolution of problems . . . concerning the Licensed Software . . . ." (Exhibit A, ¶1 attached to *Plaintiff's Memorandum contra*). Thus, evidence of the promise alleged in ¶20(e) of the *Complaint* is not barred by the parol evidence rule.

¶21). This allegation is substantially the same as that in Paragraph 20(e) of the *Complaint*. For the reasons stated *supra*, whether and to what extent the 112 licenses operated is not a matter that can be resolved on summary judgment.

In sum, Defendant's motion for summary judgment on Plaintiff's contract claim is meritorious as to the allegations contained in Paragraphs 20(a) and (b) of the *Complaint*. The motion is without merit as to all other aspects of the Plaintiff's contract claim.

Plaintiff has also filed a motion for summary judgment incorporating the arguments presented in its responses to Defendant's motion. For the reasons stated *supra*, the Court concludes that genuine issues of material fact exist on Plaintiff's remaining claims for breach of contract. Thus, Plaintiff's motion for summary judgment on its contract claims is without merit.

## B. Plaintiff's Warranty Claims

### 1. Express Warranty

In Count II of the *Complaint*, Plaintiff alleges that the Defendant acted in breach of certain express warranties. Plaintiff specifically alleges:

> (a) The software did not operate with an IBM AS/400 server and compatible PC's using Microsoft Windows software;
>
> (b) That the Operator's Manual was not complete and did not contain all of the information necessary to the Licensed Software;
>
> (c) That the Licensed Software did not substantially conform to published specifications.

(*Complaint,* ¶24).

The Agreement contains a "Warranties" provision at Paragraph 4. Among the warranties listed is an express warranty that "[t]he licensed software will operate together with the IBM

AS/400 and IBM compatible PC's using a recent version of Microsoft Windows." (*Exhibit A,* ¶4(b)). Defendant argues that this warranty was satisfied. In his affidavit, Defendant's expert Bryan Dietz states that he inspected the IBM AS/400 at Plaintiff's facility. Dietz avers: "During my review of the AS/400 I observed that the Licensed Software was installed and functioning correctly." (*Dietz Affidavit,* ¶7). According to Plaintiff's IT leader, however, the system never functioned. (*Romano Depo.,* pp. 65-69). In this conflicting evidence the Court finds a genuine issue of material fact as to whether the express warranty contained at Paragraph 4(b) of the Agreement was satisfied.

The Agreement also provides an express warranty that "[t]he current Operator's Manual is complete and contains substantially all the information that is necessary to use the Licensed Software." (*Exhibit A,* ¶4(d)). Defendant argues that the Operator's Manual contained "substantially" all the requisite information. Jeffrey Wilt, President of Defendant, avers that, "[a]t the time that McLeod entered into the Agreement, they were provided with a complete Operator's Manual and additional documentation." (*Affidavit of Jeffrey Wilt,* ¶8, attached to *Defendant's Motion for Summary Judgment*). Wilt further avers that the Operator's Manual "in and of itself contains substantially all of the information necessary to operate the Licensed Software." (*Id.,* ¶9). On deposition, Ms. Romano testified that she had "no idea" as to the merits of the allegation contained at Paragraph 24(b) of the Complaint. (*Romano Depo.,* p. 71). Romano further testified that there is no one else who would have knowledge of this particular claim. (*Id.*).

Based on this evidence, the Court finds no genuine issues of material fact on the allegation regarding the Operator's Manual. Defendant is entitled to summary judgment on this

11

aspect of Plaintiff's breach of warranty claim.

The Agreement also expressly warrants that "the Licensed Software will substantially conform to published specifications and to the documentation, provided it is used on the computer hardware and with the operating system for which it was designed." (*Exhibit A*, ¶4(e)). Plaintiff alleges a breach of this warranty in Paragraph 24(c) of the *Complaint*. On deposition, Romano testified that the software failed to conform to published specifications in that it did not conform to the "customized programming" and "implementation plans." (*Romano Depo.*, p. 72). In the Court's view, customized programming, by its nature, is distinct from the published specifications of the software. Since Plaintiff has not articulated how the software fails to conform to published specifications, the Court finds no genuine issue of material fact on this aspect of Plaintiff's breach of warranty claim.[6]

In sum, Defendant's motion for summary judgment is without merit as to the alleged breach of the warranty that the Licensed Software would operate with the IBM AS/400. The motion is meritorious as to the other aspects of Plaintiff's express warranty claims.

The Court also notes Defendant's argument that any claim for breach of warranty must necessarily fail because Plaintiff has not paid the Technical Support Fees since November 30, 2006. The "Warranties" provision of the contract provides:

> This limited warranty is effective from the date of McLeod's license of the Licensed Software, and will terminate upon the expiration of the license for the Licensed Software; whereupon, there are no further warranties, express or implied, of any kind whatsoever.

(*Exhibit A,* ¶4). Paragraph 1 of the Agreement provides:

---

[6] Further, as Defendant points out, the warranty appearing at Paragraph 4(e) states, "WilData reserves the right to change the specifications and operating characteristics of the Licensed Software it produces without notice to any party." (*Exhibit A*, ¶4(e)).

> WilData agrees that the license granted herein to McLeod shall automatically be renewed on a yearly basis upon payment in full of the annual Technical Support Fee (as defined in paragraph 10 below). Failure to pay the annual Technical Support Fee shall cause the license granted herein to terminate at the end of the license term.

(*Id.,* ¶1). According to Defendant, because the Technical Support Fees were not paid, the license and the warranties necessarily expired.

The Court concludes that resolution of this issue is properly left for the trier of fact. Plaintiff argues that it was entitled to stop payment of the Technical Support Fees because the software system did not function properly. According to the terms of the parties' agreement, the extent of recovery on any warranty claim depends on whether Plaintiff's position was justified. The Court cannot make this determination on summary judgment. Defendant's argument is therefore preserved for consideration at trial.

### 2. Implied Warranties

Counts III and IV of Plaintiff's *Complaint* allege breach of an implied warranty of merchantability and of an implied warranty of fitness for a particular purpose, respectively. With respect to Count III, Plaintiff alleges that the software was defective at the time of sale. With respect to Count IV, Plaintiff alleges that Defendant was aware of the particular purpose for which the software license was required and Defendant knew that Plaintiff relied on Defendant's skill to furnish a software license for that purpose. Plaintiff claims that defendant failed to meet the terms of those implied warranties in this case.

Under Ohio law, two implied warranties are generally recognized in connection with the sale of goods. First is an implied warranty of merchantability, which requires that the goods be

13

"fit" for their ordinary purpose of use. O.R.C. §1302.27(B)(3). Second is an implied warranty of fitness for a particular purpose, which arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ." O.R.C. §1302.28. The warranties may, however, be disclaimed.

> (B) Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

O.R.C. §1302.29(B).

Defendant argues that the two implied warranties were effectively disclaimed in this case. Defendant relies on Paragraph 4(e) of the Agreement, entitled "Warranties," which states:

> **WILDATA MAKES NO OTHER WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE LICENSED SOFTWARE OR DOCUMENTATION OR ANY MODIFICATION MADE BY WILDATA IN ACCORDANCE WITH PARAGRAPHS 11 & 12 HEREOF, INCLUDING THEIR QUALITY, PERFORMANCE, MERCHANTABILITY, OR FITNESS, FOR A PARTICULAR PURPOSE. IN NO EVENT WILL WILDATA BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE SOFTWARE OR DOCUMENTATION EVEN IF WILDATA IS NOTIFIED OF THE POSSIBILITY FOR SUCH DAMAGES.** WilData is not responsible for any costs, including, but not limited to, those incurred as a result of lost profits or revenue, loss of use of the software, loss of data, or the cost of recovering such software or data. In no case shall WilData's liability exceed the amount of the license fee.

(*Exhibit A*, ¶4(e) (emphasis in original)).

The Court concludes that the foregoing language is sufficient under Ohio law to disclaim

14

both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The disclaimer is in writing, refers expressly to implied warrants of merchantability and fitness and is made conspicuous by the bold and capital letter print. Thus, the disclaimer complies with O.R.C. §1302.29(B).

Plaintiff does not dispute the conspicuous nature of the disclaimer. Plaintiff does, however, contend that the attempted disclaimer is unconscionable because it purports to foreclose recovery of damages. Plaintiff also argues that the disclaimer is internally inconsistent because, while it forecloses the possibility of damages, it also provides that liability against Defendant cannot exceed the license fee. (*See Exhibit A,* ¶4(e)). According to Plaintiff, these defects render the attempted warranty disclaimer unenforceable under O.R.C. §1302.15. That statute states:

> (A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

O.R.C. §1302.15.

A contract is unconscionable "where one party has been misled as to its meaning, where a severe imbalance of bargaining power exists, or where the specific contractual clause is outrageous." *Hurst v. Enterprise Title Agency*, 157 Ohio App.3d 133, 141 (Ohio App. 2004). In this case, Plaintiff argues that the warranty disclaimer is unconscionable because Plaintiff could have purchased for $1,500.00 a software product capable of performing the requisite medical

15

billing tasks. Plaintiff did not purchase such a product because it lacks the ability to convert data files from Plaintiff's old software system. According to Plaintiff, because the Defendant's software did not operate as expected by Plaintiff, it would be unconscionable for Defendant to have sold Plaintiff for a far grater sum a product that allegedly performs only to the same extent as the $1,500.00 product.

As the Court concluded *supra*, whether and to what extent the software in this case functioned is a matter for the trier of fact to resolve. In the Court's view, the fact that Plaintiff could have purchased another software product does not necessarily render the disclaimer unconscionable. Moreover, Plaintiff makes no allegation as to an imbalance of bargaining power or other circumstance that would support a conclusion of unconscionability.

Further, "a warranty in which the party disclaiming warranties or remedies assumes some form of responsibility for the performance or maintenance of the product in issue is not unconscionable." *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App.3d 270, 293 (Ohio App. 1998); *see also DG Equip. Co., Inc. v. Caterpillar, Inc.*, No. 3:08-CV-317, 2008 WL 4758672, *5 (S.D. Ohio October 27, 2008) (Rose, J.). In this case, Defendant clearly assumed some form of responsibility for performance and/or maintenance of the product by virtue of the Technical Services provision of the contract. Accordingly, under Ohio law, the warranty disclaimer in this case is not unconscionable.

In sum, Defendant is entitled to summary judgment on Plaintiff's claim for breach of implied warranties. Plaintiff's motion for summary judgment on these claims is without merit.

**C. Defendant's Counterclaim**

Defendant also moves for summary judgment on its counterclaim regarding Plaintiff's failure to pay the Technical Support fee pursuant to the Agreement. Specifically, it is alleged that Plaintiff failed to pay the $49,000 fee for the period December 1, 2006, through November 30, 2007, and $49,000 for the period December 1, 2007 through November 30, 2008. (*Counterclaim,* ¶7). Defendant also seeks reimbursement "for expenses for long distance telephone charges in the amounts of $54.63, $79.64, and $132.99. . . ." (*Id.,* ¶11).

Plaintiff does not dispute its failure to pay the fees under the Technical Support provision of the Agreement. Plaintiff argues, however, that it was entitled under O.R.C. §1302.66 to revoke its acceptance of the software. Section 1302.66 provides:

> (A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
>
>> (1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>>
>> (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
> (C) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

O.R.C. §1302.66.

The Court concludes that there exist genuine issues of material fact as to whether Plaintiff was entitled to revoke its acceptance of the software by failing to pay the Technical Support fees. Thus, the Court denies both Defendant's and Plaintiff's motions for summary

judgment on the counterclaim.

## IV.

Defendant's Motion for Summary Judgment (**Doc. #43**) is **GRANTED in part** and **DENIED in part**, consistent with the foregoing. Plaintiff's Motion for Summary Judgment (**Doc. #68**) is **DENIED**.

A final pretrial conference will be scheduled forthwith.


<u>March 8, 2010</u>                           *s/Norah McCann King*
**DATE**                                **NORAH McCANN KING**
                                        **UNITED STATES MAGISTRATE JUDGE**